Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY WURST,<br><br>    Plaintiff,<br><br>    v.<br><br>GILAT SATELLITE NETWORKS LTD., DOV BAHARAV, ELYEZER SHKEDY, DAFNA COHEN, MEIR SHAMIR, DAFNA SHARIR, AMIR OFEK, ISHAY DAVIDI, AYLON RAFAELI, and AMIRAM BOEHM,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Rodney Wurst ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.      This is an action against Gilat Satellite Networks Ltd. ("Gilat" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9,

1

in connection with the proposed acquisition (the "Proposed Transaction") of Gilat by Comtech Telecommunications Corp. ("Comtech") and Convoy Ltd. ("Merger Sub"), a wholly-owned subsidiary of Comtech.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and Comtech's principal executive offices are located in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Gilat's common stock.

7. Defendant Gilat provides satellite-based broadband communications. Gilat designs and manufactures ground-based satellite communications equipment and provides

comprehensive solutions and end-to-end services. Gilat sells and distributes its products and provides services internationally, including in the United States, Latin America, Asia, Asia Pacific, Africa, Europe and CIS (Russian Commonwealth). The Company is incorporated in Israel with principal executive offices located in Petah Tikva, Israel. The Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol, "GILT."

8. Defendant Dov Baharav ("Baharav") is Chairman of the Board of the Company.

9. Defendant Elyezer Shkedy ("Shkedy") is a director of the Company.

10. Defendant Dafna Cohen ("Cohen") is a director of the Company.

11. Defendant Meir Shamir ("Shamir") is a director of the Company.

12. Defendant Dafna Sharir ("Sharir") is a director of the Company.

13. Defendant Amir Ofek ("Ofek") is a director of the Company.

14. Defendant Ishay Davidi ("Davidi") is a director of the Company.

15. Defendant Aylon Rafaeli ("Rafaeli") is a director of the Company.

16. Defendant Amiram Boehm ("Boehm") is a director of the Company.

17. Defendants Baharav, Shkedy, Cohen, Shamir, Sharir, Ofek, Davidi, Rafaeli, and Boehm are collectively referred to herein as the "Individual Defendants."

18. Defendants Gilat and the Individual Defendants are collectively referred to herein as the "Defendants."

**OTHER RELEVANT ENTITIES**

19. Comtech designs, develops, produces, and markets products, systems, and services for communications solutions in the United States and internationally. Comtech is incorporated in Delaware with principal executive offices located in Melville, New York. Comtech's common stock trades on the NASDAQ under the ticker symbol, "CMTL."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20.     On January 29, 2020, Gilat and Comtech issued a press release announcing that Comtech had agreed to acquire Gilat in a cash and stock transaction for $10.25 per Gilat ordinary share, of which 70% would be paid in cash and 30% in Comtech common stock. The press release states, in pertinent part:

> **Comtech Telecommunications Corp. to Acquire Gilat Satellite Networks for $532.5 Million in a Strategic and Cash Accretive Transaction**
>
> January 29, 2020 07:01 AM Eastern Standard Time
>
> MELVILLE, N.Y., & PETAH TIKVA, Israel--(BUSINESS WIRE)--January 29, 2020 7:00 A.M. ET –
>
> Comtech Telecommunications Corp. (Nasdaq: CMTL) ("Comtech") and Gilat Satellite Networks Ltd. (Nasdaq: GILT; TASE: GILT) ("Gilat") jointly announced today that Comtech has agreed to acquire Gilat in a cash and stock transaction for $10.25 per Gilat ordinary share of which 70% will be paid in cash and 30% in Comtech common stock, resulting in an enterprise value of approximately $532.5 million. Founded in 1987 with its headquarters in Israel, Gilat is a worldwide leader in satellite networking technology, solutions and services with market leading positions in the satellite ground station and in-flight connectivity solutions markets and deep expertise in operating large network infrastructures.
>
> Based on Comtech's fiscal year 2019 actual results and Gilat's trailing twelve-month results through June 30, 2019, on a pro-forma basis, Comtech would have reported approximately $926.1 million of revenue with Adjusted EBITDA of approximately $130.2 million (see definition and reconciliation to GAAP financial measures in the table below). The combined companies would employ approximately 3,000 people and offer best-in-class satellite technology, public safety and location technology and secure wireless solutions to commercial and government customers around the world.
>
> \*     \*     \*
>
> **Leadership and Business Structure**
>
> Fred Kornberg, Comtech's Chairman of the Board and Chief Executive Officer ("CEO") will continue in his role as CEO of the combined company. Michael Porcelain, Comtech's Chief Operating Officer, who was promoted and named

4

President of Comtech earlier today, will work hand-in-hand with both Comtech and Gilat employees to maximize the potential of the combined company. Michael Bondi will continue in his role as Chief Financial Officer ("CFO") of the combined company. Comtech will continue to maintain its headquarters in Melville, New York.

Post-closing of the transaction, Gilat will become a wholly owned subsidiary of Comtech and will maintain its well renowned and highly regarded brand. Gilat will continue to maintain its corporate headquarters and research and development facility in Petah Tikva, Israel under the leadership of Yona Ovadia, Gilat's CEO and Adi Sfadia, Gilat's CFO. Mr. Sfadia will also be assuming the role of Gilat's Chief Integration Officer, helping to plan a smooth acquisition and to maximize shareholder value.

No Comtech or Gilat facility locations are expected to be closed as a result of the transaction and each key business area is expected to continue to be led by its respective existing proven leadership teams after the transaction closes.

**Transaction Structure and Terms**

Under the terms of the agreement, unanimously approved by both companies' Board of Directors, Gilat shareholders will receive total consideration of $10.25 per share, comprised of $7.18 per share in cash and 0.08425 of a share of Comtech common stock for each share of Gilat held.

The total consideration of $10.25 represents a premium of approximately 14.52% to Gilat's 90-day volume-weighted average trading price.

Upon completion of the transaction, Gilat's shareholders will own approximately 16.1% of the combined company.

**Financing and Acquisition Plan Expenses**

As of September 30, 2019, Gilat had approximately $53.1 million of unrestricted cash and cash equivalents with debt of approximately $8.2 million. As of October 31, 2019, Comtech had approximately $46.9 million of cash and cash equivalents and debt of approximately $169.0 million.

Comtech expects to fund the acquisition and related transaction costs by redeploying a portion of the $100.0 million of pro forma combined cash and cash equivalents plus additional cash expected to be generated prior to closing, and by drawing on a new $800.0 million secured credit facility to be provided by Citibank, N.A., Manufacturers and Traders Trust Company ("M&T Bank"), Santander Bank, N.A., BMO Harris Bank, N.A. ("Bank of Montreal"), Regions Bank, Israel Discount Bank of New York and Goldman Sachs Bank USA. Comtech expects that the cash interest rate on this facility will approximate 4.0% to 5.0% on an annual

5

basis, before any origination fees. Furthermore, Comtech expects the terms of the facility will be based on a net leverage ratio providing significant flexibility. The exact terms of the credit facility will be finalized at or prior to the closing of the acquisition.

On a pro forma basis including preliminary estimated combined acquisition plan expenses of approximately $27.0 million, the repayment of Gilat bank debt and funding of Comtech's other pending acquisitions, Comtech would have approximately $45.0 million of unrestricted cash at closing with total net debt of approximately $500.0 million or net leverage of 3.85x. Total net debt is expected to decrease quickly and significantly. Based on expected strong cash flows to be generated from the combined businesses, net leverage twelve months after closing will decrease to approximately 3.00x.

Comtech expects that it will maintain its annual targeted dividend of $0.40 per share.

In connection with the acquisition of Gilat, Comtech expects to incur acquisition plan expenses (including professional fees for financial and legal advisors and debt refinancing costs). Some of these expenses are expected to be immediately expensed both prior to and upon closing, another portion expensed during the first year following the closing and the balance capitalized. Pursuant to accounting rules, the acquisition is expected to result in a material increase in annual amortization expense related to intangibles and other fair value adjustments.

**Shareholder Support and Closing Conditions**

Gilat's directors, executive officers and certain significant shareholders holding approximately 45% of Gilat's issued and outstanding shares in the aggregate have entered into voting agreements pursuant to which they have agreed, subject to certain terms and conditions, to vote in favor of the transaction. In the upcoming weeks, Gilat will call for an Extraordinary General meeting of Shareholders to vote on the merger. The transaction requires the affirmative vote of the holders of a majority of the ordinary shares present (in person or by proxy) at the meeting and voting on such matter (including abstentions and broker non-votes).

The transaction is subject to customary closing conditions (including, among others, the approval of Gilat's shareholders and expiration of the applicable waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976) and the transaction is expected to close late in Comtech's fiscal year 2020 or the first part of its fiscal 2021. No approval by Comtech stockholders is required and the consummation of the transaction is not subject to any financing condition.

\*     \*     \*

**Advisors**

Goldman Sachs and Co. LLC is serving as an exclusive financial advisor to Comtech. Proskauer Rose LLP and Goldfarb Seligman & Co. are acting as Comtech's legal counsel. Alnitak & Co. Inc., Jefferies LLC and Quilty Analytics LLC are serving as financial advisors to Gilat. Naschitz Brandes Amir & Co. is acting as Gilat's legal counsel.

21. On March 2, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement under the Securities Act of 1933 (the "Registration Statement") in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

22. The Registration Statement, which recommends that Gilat shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Jefferies LLC ("Jefferies"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving the Company's additional financial advisors, Quilty Analytics ("Quilty") and Bradley Woods & Co. Ltd. ("Bradley Woods").

23. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Gilat's Reasons for the Merger; Recommendation of the Gilat Board; (iii) Opinion of Jefferies LLC; and (iv) Certain Unaudited Projections of Gilat.

24. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, Gilat shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning the Company's Financial Projections

25.     The Registration Statement omits material information concerning the Company's financial projections.

26.     The Registration Statement provides that, "in connection with the Merger, Gilat's management prepared projections regarding Gilat's future operations for the calendar years 2020 through 2024[,]" purportedly consisting of the "Gilat Management Base Case Projections" and the "Gilat Management Upside Case Projections" (collectively, the "Gilat Management Projections")."

27.     The Registration Statement, however, fails to disclose the following concerning the Gilat Management Projections: (1) all line items used to calculate (i) Adjusted EBITDA, and (ii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

28.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-

29. The disclosure of the Company's projected financial information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

30. Accordingly, in order to bring the Registration Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Gilat Management Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Gilat shareholders.

### 2. Material Omissions Concerning Jefferies' Financial Analyses

32. In connection with the Proposed Transaction, the Registration Statement omits

---

speech.html (footnotes omitted) (last visited Mar. 6, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

material information concerning analyses performed by Jefferies.

33. The Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction utilized by Jefferies in its "*Selected Public Companies Analysis*" of Gilat and Comtech, and its "*Selected Precedent Transactions Analysis*[.]"

34. The Registration Statement fails to disclose the following concerning Jefferies' "*Discounted Cash Flow Analysis*": (1) all line items used to calculate the stand-alone unlevered, after-tax free cash flows that Gilat was forecasted to generate during the fiscal years ending December 31, 2020 through December 31, 2024; (2) the present values (as of December 31, 2019) of net operating loss carryforwards, cash flows, and terminal values; (3) the implied terminal values of Gilat; and (4) the individual inputs and assumptions underlying the (i) perpetuity growth rates of 1.5% to 2.5%, and (ii) discount rate range of 8.0% to 9.0%.

35. With respect to Jefferies' analysis of research analysts' stock price targets for the common stock of Gilat and Comtech, the Registration Statement fails to disclose: (1) the individual price targets for Gilat and Comtech observed by Jefferies in its analysis; and (2) the sources of those price targets.

36. With respect to Jefferies' analysis of implied premiums paid or proposed to be paid in selected mergers and acquisition transactions announced from January 1, 2017 through January 28, 2020, the Registration Statement fails to disclose: (1) the transactions observed by Jefferies in its analysis; and (2) the individual premiums paid in each of the transactions.

37. The valuation methods, underlying assumptions, and key inputs used by Jefferies in rendering its purported fairness opinion must be fairly disclosed to Gilat shareholders. The description of Jefferies' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Gilat

shareholders are unable to fully understand Jefferies' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Gilat shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

38. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

39. The Registration Statement provides that, "[o]n November 19, 2019, Party B signed a confidentiality agreement with Gilat and thereafter Gilat provided representatives of Party B access to limited overview diligence material concerning Gilat."

40. The Registration Statement, however, fails to disclose whether Gilat's confidentiality agreement with Party B contained a standstill provision with a "don't ask, don't waive" provision (including its time of enforcement) that would preclude Party B from making a superior offer for Gilat.

41. Without this information, the Company's shareholders may have the mistaken belief that Party B is or was permitted to submit superior proposals for the Company, when in fact it is or was contractually prohibited from doing so. This information is material because a reasonable Gilat shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Gilat shareholders.

### 4. Material Omissions Concerning Potential Conflicts of Interest Involving Quilty and Bradley Woods

43. The Registration Statement omits material information concerning potential conflicts of interest involving Quilty and Bradley Woods.

44. In early May 2019, Bradley Woods facilitated discussions between Gilat and Comtech concerning the Proposed Transaction.

45. According to the Registration Statement, in the section entitled, "Gilat's Reasons for the Merger; Recommendation of the Gilat Board," the Board stated that it relied upon advice from Bradley Woods in evaluating and recommending that Gilat shareholders approve the Proposed Transaction. This advice included, among other things, guidance concerning strategic alternatives. In fact, "Bradley Woods advised the Gilat Board that they did not know of any other buyer at that time that would pay more than the consideration offered in the contemplated transaction by Comtech." *See* Registration Statement at 50.

46. The Registration Statement provides that "Gilat also engaged Quilty Analytics to perform industry, operational and business due diligence on Comtech on Gilat's behalf[,]" and that Quilty was involved in "various discussions [with representatives of Gilat] on financial, regulatory and other due diligence matters."

47. The Registration Statement, however, fails to disclose the following concerning Bradley Woods and Quilty: (1) the amount of compensation Bradley Woods and Quilty have received or will receive in connection with their engagement by the Company; (2) the amount of their compensation that is contingent upon the consummation of the Proposed Transaction; and (3) whether Bradley Woods and Quilty have performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received for providing such services.

12

48. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on the Board's recommendation to approve the Proposed Transaction.

49. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Gilat shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

53. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful

information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's

shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: March 6, 2020                                             Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

         Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

         *Counsel for Plaintiff*